**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Evening Star Investments LLC,

Plaintiff,

v.

Sara Jorgenson, et al.,

Defendants.

No. CV-26-03654-PHX-JCH

**ORDER**

Pending before the Court are Plaintiff Evening Star Investments, LLC's ("Evening Star") Motion for Entry of Default Judgment Against Ashley Jorgenson (Doc. 20); Motion for Entry of Default Judgment Against Sara Jorgenson (Doc. 21); and Proposed Intervenor-Plaintiff Vynture Capital, LLC's ("Vynture") Motion to Intervene (Doc. 22). For reasons stated below, the Court will defer ruling on the motions for default judgment and motion to intervene and require Plaintiff, by **September 25, 2026**, to show cause why this case should not be dismissed for lack of federal subject matter jurisdiction.

## I. Background

Evening Star is a judgment creditor of Stephen Jorgenson. On February 3, 2026, the Maricopa County Superior Court entered judgment in Evening Star's favor and against Stephen and other parties. Doc. 1 at 3. The judgment included $2.6 million in principal, plus interest, attorneys' fees, and costs. *Id.* Evening Star alleges that the judgment remains unpaid. *Id.*

Sara Jorgenson and Ashley Jorgenson are Stephen's adult daughters. *Id.* Evening

Star alleges that, from December 2021 through March 2026, Stephen transferred money from his personal Northern Trust account to or for the benefit of Sara and Ashley. *Id.* at 4–9. The alleged transfers include tuition payments, transfers to savings and investment accounts maintained for the daughters, and direct payments by wire and Zelle. *Id.* Evening Star alleges that these transfers total at least $111,049.58. *Id.* at 12–14.

On May 22, 2026, Evening Star filed this action against Defendants Sara and Ashley. Doc. 1. It alleges that Stephen made the transfers to keep assets away from his creditors and that Sara and Ashley received the transfers without giving reasonably equivalent value in return. *Id.* at 10–12. The Complaint asserts claims for actual fraudulent transfer, constructive fraudulent transfer, and, in the alternative, unjust enrichment. *Id.* at 10–13. Evening Star seeks to recover from each Defendant the value of the transfers that Defendant received. *Id.* at 13–14.

**A. Motions for Default Judgment**

Neither Defendant appeared nor responded to the Complaint. Evening Star filed affidavits of service indicating that Sara was personally served on June 10, 2026, and Ashley was personally served on June 11, 2026. Docs. 16 at 2; 18 at 2.

On July 10, 2026, Evening Star applied for entry of default against each Defendant (Docs. 15, 17), and on July 13, 2026, the Clerk entered default. Doc. 19.

On July 21, 2026, Evening Star filed separate Motions for Default Judgment against Ashley and Sara. Docs. 20, 21. Evening Star asks the Court to enter default judgment as to liability and then hold a Rule 55(b)(2) hearing to determine the amount each Defendant must pay. Docs. 20 at 2–3; 21 at 2–3. Evening Star explains that some of the alleged transfers were made directly to a particular Defendant, but other transfers were made to savings and investment accounts held for the daughters' benefit. *Id.* The Complaint does not allege how the transfers to the accounts should be divided between Sara and Ashley. *See* Doc. 1. Evening Star proposes to present account records, witness testimony, and other evidence at a hearing to definitively establish the value of the transfers received by or made for the benefit of each Defendant. Docs. 20 at 3; 21 at 3.

**B. Vynture's Motion to Intervene**

Three days after Evening Star filed its Motions for Default Judgment, Vynture Capital, LLC ("Vynture") moved to intervene in this action. Doc. 22. Vynture states that it is also a judgment creditor of Stephen Jorgenson, holding an unpaid Arizona state-court judgment exceeding $1.13 million against Stephen arising from two promissory notes that Stephen personally guaranteed. *Id.* at 2.

Vynture seeks to intervene as a plaintiff under Rule 24(a) or, alternatively, Rule 24(b). Doc. 22 at 1, 3–6. Like Evening Star, Vynture seeks relief based on the transfers Stephen allegedly made to Sara and Ashley. *Id.* at 1–2. Vynture states that its claims concern the same transfers at issue in Evening Star's Complaint. *Id.*

Vynture argues that its interests may be affected if Evening Star obtains a default judgment before Vynture can assert its own claims and that it and Evening Star are competing creditors seeking recovery from the same limited pool of transferred assets. *Id.* at 4–5. Vynture asks the Court to allow it to intervene and file its proposed Complaint in Intervention, and for the Court to defer ruling on Evening Star's pending Motions for Default Judgment until the Court resolves the Motion to Intervene. *Id.* at 6.

**II. Subject Matter Jurisdiction**

At this point, Evening Star has not demonstrated that the Court has subject matter jurisdiction, and it seems questionable whether the Court does. A federal court can only reach the merits of a dispute if it has jurisdiction to do so. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotations omitted). Jurisdiction is limited to subject matter authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A district court has a duty to assess *sua sponte* whether federal subject matter jurisdiction exists, whether or not the parties raise the issue. *United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004). The Court must dismiss the case if, at any

time, it determines that it lacks subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists. *Kokkonen*, 511 U.S. at 377.

Federal subject matter jurisdiction generally exists through either federal-question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Evening Star asserts only state-law claims for fraudulent transfer and unjust enrichment and invokes this Court's jurisdiction under § 1332. Doc. 1 at 1–2. Thus, diversity jurisdiction is the asserted basis for federal jurisdiction here.

Diversity jurisdiction has two requirements: (1) complete diversity of citizenship between the parties, and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). While there appears to be complete diversity between the parties at this time (Doc. 1 at 1–2), it is not evident that the amount in controversy has been met.

**A. Amount in Controversy**

Evening Star alleges that Stephen Jorgenson made transfers totaling "not less than $111,049.58" to or for the benefit of Sara and Ashley. Doc. 1 at 2, 8. However, the Complaint repeatedly describes that figure as an aggregate amount as to both Defendants. Evening Star seeks from "each Defendant" the value of the transfers "received by such Defendant," while alleging $111,049.58 "in the aggregate as to all Defendants." *Id.* at 11–14.

A plaintiff generally may not add together separate claims against multiple defendants to reach § 1332's jurisdictional amount. *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir. 1978). Claims against multiple defendants may be aggregated only when the claims are "common and undivided" such that the defendants' liability is joint rather than several. *Id*. When multiple defendants are severally liable, the amount-in-controversy requirement must be satisfied as to the individual defendants rather than by adding their separate liabilities together. *Id.*

Evening Star's own motions detail that the claimed liability is separate. Evening Star asks for judgment against each daughter based on the value of transfers that Defendant

individually received. Evening Star acknowledges that although some transfers were made directly to an identified Defendant, other transfers were made to savings and investment accounts maintained for the daughters and that the allocation of those funds between Sara and Ashley "is not apparent from the pleadings." Docs. 20 at 2; 21 at 2.

Thus, the allegation that the transfers total $111,049.58 as to both Defendants does not establish that the amount in controversy exceeds $75,000 as to either Defendant. It would appear the Court, at most, could have subject matter jurisdiction over only one of the Defendants. Further, if Stephen gave his daughters roughly equal amounts, then it would appear the Court would not have subject matter jurisdiction over either Defendant. Nor does the present record establish a basis for treating Sara and Ashley as jointly liable for all identified transfers.

**B. The Tuition Payments**

The tuition payments raise an additional concern. Of the $111,049.58 in transfers identified in the Complaint, $37,041.22 consists of tuition payments made directly to educational institutions: $10,133.20 and $10,167.65 paid to Fort Lewis College for Sara, and $9,651.53 and $7,088.84 paid to Arizona State University for Ashley. Doc. 1 at 4–5. The Complaint describes these as payments to the schools "for the benefit of" the daughters rather than payments made directly to them. Doc. 1 at 8.

Arizona law permits recovery of the value of a voidable transfer from "[t]he first transferee of the asset or the person for whose benefit the transfer was made." A.R.S. § 44-1008(B)(1). The Complaint does not allege that Sara or Ashley was the first transferee of tuition money paid directly to their schools. *See* Doc. 1. The remaining question is whether the daughters may nevertheless be treated as persons "for whose benefit" those transfers were made.

Although no controlling Arizona authority presented to the Court addresses tuition payments in this setting, the California Court of Appeal considered a materially similar issue in *Lo v. Lee*, 24 Cal. App. 5th 1065 (2018). There, an insolvent father paid more than $100,000 directly to a university for his adult son's tuition and expenses. *Lo*, 24 Cal. App.

5th at 1069. The creditor later sought to recover those payments from the son under California's Uniform Voidable Transactions Act, which, like A.R.S. § 44-1008(B)(1), permits recovery from the first transferee or the person for whose benefit the transfer was made. *Id.* at 1070–73.

*Lo* concluded that merely receiving some indirect benefit from a transfer does not make a person liable as a transfer beneficiary; the claimed benefit must actually be received and must be quantifiable and accessible to the alleged beneficiary. *Id.* at 1073–75. The son's education did not satisfy that standard. The educational benefit was intangible and could not be disgorged, and the son never had access to or control over the money because his father transferred the funds directly to the university. *Id.* at 1074–75. The court concluded that the creditor had not adequately alleged a basis to recover the tuition payments from the son. *Id.* at 1075.

Here, the allegations are materially similar. The Complaint identifies Fort Lewis College and Arizona State University—not Sara or Ashley—as the recipients of the tuition payments. Doc. 1 at 4–5. It does not allege that either daughter possessed, controlled, or had access to the tuition funds before they were paid to the schools. On the present record, then, it is questionable why the tuition payments may be included in the amount recoverable from these Defendants.

Subtracting the $37,041.22 in tuition payments from the $111,049.58 in total identified transfers leaves $74,008.36. Thus, if the tuition payments are not recoverable from Sara and Ashley, the remaining identified transfers fall below § 1332's $75,000 threshold even when the remaining transfers to both Defendants are combined. And as explained above, Evening Star has not established that it may combine Sara's and Ashley's separate alleged liabilities in any event.

Evening Star asks the Court to enter default judgment as to liability and then conduct a separate Rule 55(b)(2) hearing to determine how much of the alleged transfers is attributable to each Defendant. Docs. 20 at 2–3; 21 at 2–3. Evening Star states that it intends at that hearing to present Northern Trust and MassMutual records, witness testimony, and

other evidence establishing the value of the transfers received by or made for the benefit of each Defendant.

**III. Conclusion**

Under the circumstances, the Court will not set a separate damages hearing before determining that it has subject matter jurisdiction to enter judgment in the first place. Plaintiff may submit the evidence as part of its response to this order to show cause.

Accordingly,

**IT IS ORDERED that** by **September 25, 2026**, Plaintiff shall show cause why this case as to one or both of the Defendants should not be dismissed for failure to meet the $75,000 amount-in-controversy requirement for diversity jurisdiction.

**IT IS FURTHER ORDERED that** the Court defers ruling on Plaintiff's Motion for Default Judgment against Ashley Jorgenson (Doc. 20); Plaintiff's Motion for Default Judgment against Sara Jorgenson (Doc. 21); and Vynture Capital, LLC's Motion to Intervene (Doc. 22) pending resolution of the Court's subject matter jurisdiction.

**IT IS FURTHER ORDERED that** failure to timely make the required showing will result in dismissal of this action for lack of subject matter jurisdiction, and the pending motions will be denied as moot.

Dated this 8th day of September, 2026.

John C. Hinderaker
United States District Judge